# DECLARATION OF ICE SPECIAL AGENT CHRISTOPHER E. BRANT

I, Christopher E. Brant, being duly sworn, hereby depose and state as follows:

1. I am a Special Agent (S/A) of the Department of Homeland Security, Immigration and Customs Enforcement (ICE), and have been so employed since November 27, 2006. I am currently assigned to the ICE Resident Agent in Charge Raleigh, North Carolina Field Office (RAC/Raleigh) and my duties include investigating violations of Titles 8, 18, 19, 21 and 31 of the United States Code (U.S.C). Prior to my reporting for assignment at RAC/Raleigh, I attended twenty-three (23) weeks of training at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia where I received instruction in Federal criminal statutes, search, seizure and arrest authority and many other facets of law enforcement. Prior to attending FLETC, I worked five (5) years as an accountant for two (2) multi-billion dollar companies and obtained Undergraduate and Master's degrees in Business Administration and Finance.

2. This declaration is made in support of forfeiture of $52,352.79 (funds) seized on July 27, 2010, from First Citizens Bank (FCB) accounts 003242535690, held in the name of H&J SUPER DISCOUNT INC., 003242552696, held in the name of H AN J SUPER DISCOUNTS, 003249661606 held in the name of HAMOUD AHMED ALGHOZZI, and 003249660646, held in the name of JAMAL ALSHWAS, where there is probable cause to believe the funds are traceable to violations of Title 31, U.S.C., §§ 5313(a) and 5324(a)(3). Furthermore, these violations subject the funds to forfeiture to the United States pursuant to Title 31, U.S.C., § 5317.

3. Because I am submitting this declaration in support of forfeiture of the aforementioned funds, I am not including each and every fact known to me concerning this investigation. Instead, I am setting forth only those facts necessary to establish probable cause to believe that funds seized from FCB accounts 003242535690, 003242552696, 003249661606, and 003249660646 are traceable to violations of Title 31, U.S.C., §§ 5313(a) and 5324(a)(3). Where statements of others are set forth in this Affidavit, they are set forth in substance and in part.

### Title 31, U.S.C., § 5313(a) "Reports on Domestic Coins and Currency Transactions"

4. Title 31, U.S.C., § 5313(a) "Reports on Domestic Coins and Currency Transactions" and its related regulations, state that when a domestic financial institution is involved in a transaction for the payment, receipt or transfer of United States coins or currency (i.e. Cash) in an amount greater than $10,000, the financial institution

GOVERNMENT EXHIBIT A

shall file a Currency Transaction Report (CTR) for each cash transaction, such as, by way of example, a deposit, withdrawal, exchange of currency or other payment or transfer by, through or to a financial institution. Financial institutions file CTR'S with the Financial Crime Enforcement Network at the Detroit Data Center on forms that require, among other things, the identity of the individual who conducted the transaction and the individual or organization for whom the transaction occurred. These regulations also require that multiple transactions be treated as a single transaction if the financial institution has knowledge that they are by, or on behalf of, the same person, and they result in currency either received or disbursed by the financial institution totaling more than $10,000 during any one business day.

### Title 31, U.S.C., § 5324(a) "Structuring Transactions to Evade Reporting Requirements"

5. Pursuant to Title 31, U.S.C., § 5324(a), it is a crime for an individual to (1) "cause or attempt to cause a domestic financial institution to fail to file a report under § 5313(a), (2) "cause or attempt to cause a domestic financial institution to file a report required under § 5313(a) that contains a material omission or misstatement of fact", (3) structure or assist in structuring, any transaction with one or more domestic financial institutions" for the purpose of evading the reporting requirements of Title 31, U.S.C., § 5313(a).

### Title 31, U.S.C., § 5317 "Search and Forfeiture of Monetary Instruments"

6. Title 31, U.S.C., § 5317 provides for the forfeiture of any property in a violation of Title 31, U.S.C., § 5324 or conspiracy to violate Title 31, U.S.C., § 5324.

### INVESTIGATION

7. On or about January 8, 2010, I reviewed records of FCB accounts 003242535690, 003242552696, 003249661606, and 003249660646 for the dates September 8, 2009, through December 29, 2009. Based on a review of these records, I believe that such records demonstrate a pattern of activity consistent with structuring. There appears to be numerous deposits made at one FCB branch followed by several other deposits at other FCB branches, all of which are less than $10,000, but in aggregate exceed $10,000 over the course of a short span of time, usually one day to one week.

8. The following records reflect structuring activity that began on September 8, 2009, and continued through December 29, 2009 totaling $166,538 USD:

| Date | Account | Cash | Branch |
|---|---|---|---|
| 09/08/2009 | 003242535690 | 9,650 | Smithfield - Main |
| 09/08/2009 | 003242552696 | 1,240 | Smithfield - South |
| 09/08/2009 | 003249661606 | 1,000 | Elizabethtown - Main |
| 09/08/2009 | 003249660646 | 1,700 | Smithfield - South |
| | | 13,590 | |
| 09/14/2009 | 003242535690 | 9,860 | Smithfield - Main |
| 09/14/2009 | 003242552696 | 865 | Smithfield - South |
| 09/14/2009 | 003249660646 | 1,460 | Smithfield - South |
| | | 12,185 | |
| 09/21/2009 | 003242535690 | 9,460 | Smithfield - Main |
| 09/21/2009 | 003242552696 | 860 | Smithfield - South |
| | | 10,320 | |
| 09/28/2009 | 003242535690 | 9,860 | Smithfield - Main |
| 09/28/2009 | 003242552696 | 1,115 | Smithfield - South |
| 09/28/2009 | 003249660646 | 1,640 | Smithfield - South |
| | | 12,615 | |
| 10/05/2009 | 003242535690 | 9,870 | Smithfield - Main |
| 10/05/2009 | 003242552696 | 1,035 | Smithfield - South |
| 10/06/2009 | 003249661606 | 3,895 | Elizabethtown - Main |
| | | 14,800 | |
| 10/12/2009 | 003242535690 | 9,256 | Smithfield - Main |
| 10/12/2009 | 003242552696 | 1,560 | Smithfield - South |
| 10/13/2009 | 003249660646 | 580 | Smithfield - South |
| | | 11,396 | |
| 10/19/2009 | 003242535690 | 9,700 | Smithfield - Main |
| 10/19/2009 | 003242552696 | 1,450 | Smithfield - South |
| 10/19/2009 | 003249660646 | 1,500 | Smithfield - South |
| 10/20/2009 | 003249661606 | 1,620 | Elizabethtown - Main |
| 10/26/2009 | 003249661606 | 1,405 | Elizabethtown - Main |
| | | 15,675 | |
| 11/09/2009 | 003242535690 | 9,495 | Smithfield - Main |
| 11/09/2009 | 003242552696 | 1,020 | Smithfield - South |
| 11/10/2009 | 003249661606 | 2,130 | Elizabethtown - Main |
| 11/16/2009 | 003249661606 | 1,685 | Elizabethtown - Main |
| | | 14,330 | |

| Date | Account | Amount | Branch |
|---|---|---|---|
| 11/30/2009 | 003242535690 | 9,940 | Smithfield - Main |
| 11/30/2009 | 003242552696 | 1,295 | Smithfield - South |
| | | **11,235** | |
| | | | |
| 12/07/2009 | 003242535690 | 9,940 | Smithfield - Main |
| 12/07/2009 | 003242552696 | 1,010 | Smithfield - South |
| | | **10,950** | |
| | | | |
| 12/14/2009 | 003242535690 | 9,950 | Smithfield - Main |
| 12/14/2009 | 003242552696 | 1,210 | Smithfield - South |
| 12/18/2009 | 003242535690 | 6,645 | Smithfield - Main |
| 12/21/2009 | 003242552696 | 790 | Smithfield - Main |
| | | **18,595** | |
| | | | |
| 12/28/2009 | 003242552696 | 1,172 | Smithfield - Main |
| 12/28/2009 | 003242535690 | 8,765 | Smithfield - Main |
| | | **9,937** | |
| | | | |
| 12/29/2009 | 003242535690 | 9,660 | Smithfield - Main |
| 12/29/2009 | 003249661606 | 1,250 | Smithfield - Main |
| | | **10,910** | |
| | | | |
| **Total** | | **166,538** | |

9. Upon further review of FCB accounts 003242535690 and 003242552696, I noted that between March 2, 2009 and December 14, 2009, there were twenty-six (26) instances of cash deposits being made that exceeded $10,000. Each instance consisted of multiple structured cash deposits made for less than $10,000, but that in aggregate exceeded $10,000. The following records reflect the $277,356 in structured activity:

| Date | Account 1 | Account 2 | Total Cash |
|---|---|---|---|
| 03/02/2009 | 003242535690 | 003242552696 | 10,230 |
| 04/13/2009 | 003242535690 | 003242552696 | 10,301 |
| 04/20/2009 | 003242535690 | 003242552696 | 10,245 |
| 04/27/2009 | 003242535690 | 003242552696 | 10,107 |
| 05/04/2009 | 003242535690 | 003242552696 | 10,900 |
| 05/18/2009 | 003242535690 | 003242552696 | 10,240 |
| 06/08/2009 | 003242535690 | 003242552696 | 10,320 |
| 06/29/2009 | 003242535690 | 003242552696 | 10,345 |
| 07/06/2009 | 003242535690 | 003242552696 | 10,980 |
| 07/27/2009 | 003242535690 | 003242552696 | 10,830 |
| 08/03/2009 | 003242535690 | 003242552696 | 10,550 |
| 08/17/2009 | 003242535690 | 003242552696 | 10,500 |
| 08/24/2009 | 003242535690 | 003242552696 | 11,065 |
| 08/31/2009 | 003242535690 | 003242552696 | 10,525 |
| 09/08/2009 | 003242535690 | 003242552696 | 10,890 |

| | | | |
|---|---|---|---|
| 09/14/2009 | 003242535690 | 003242552696 | 10,725 |
| 09/21/2009 | 003242535690 | 003242552696 | 10,320 |
| 09/28/2009 | 003242535690 | 003242552696 | 10,975 |
| 10/05/2009 | 003242535690 | 003242552696 | 10,905 |
| 10/13/2009 | 003242535690 | 003242552696 | 10,816 |
| 10/19/2009 | 003242535690 | 003242552696 | 11,150 |
| 11/09/2009 | 003242535690 | 003242552696 | 10,515 |
| 11/23/2009 | 003242535690 | 003242552696 | 10,577 |
| 11/30/2009 | 003242535690 | 003242552696 | 11,235 |
| 12/07/2009 | 003242535690 | 003242552696 | 10,950 |
| 12/14/2009 | 003242535690 | 003242552696 | 11,160 |
| **Total** | | | **277,356** |

10. On January 27, 2010, I, along with another RAC/Raleigh S/A, travelled to H&J SUPER DISCOUNT located at 2104 South Brightleaf Boulevard in Smithfield, North Carolina. Upon arriving at H&J SUPER DISCOUNT, I observed that H&J SUPER DISCOUNT consisted of a four (4) sided red brick structure with a sign above the entrance reading "Super Discount Mini-Mart" and the numbers "2104" on a side window. In addition, I observed that H&J SUPER DISCOUNT had approximately six (6) fuel pumps, none of which allowed for credit and/or debit card transactions at the pump. I entered H&J SUPER DISCOUNT and observed an area not unlike most service/gas stations. The interior consisted of an area for general merchandise (e.g. food items, candies, toiletry items, etc.), beverages (e.g. alcohol, soft drinks, etc.), cigarettes, lottery, and other items. Other than the interior appearing rather outdated, I noticed nothing of significance. I purchased a soft drink and departed the premises without incident.

11. On February 10, 2010, I conducted a search of the North Carolina Secretary of State (NCSS) website for corporation listings under the name H&J SUPER DISCOUNT. The search revealed the following information:

   a. H&J SUPER DISCOUNT incorporated with the NCSS on February 16, 2005.

   b. H&J SUPER DISCOUNT listed its primary address as 2104 South Brightleaf Boulevard, Smithfield, Johnston County, North Carolina.

   c. H&J SUPER DISCOUNT listed its Nature of Business as "Grocery".

   d. H&J SUPER DISCOUNT listed its Registered Agent and President as Hamoud A. ALGHOZZI.

   e. H&J SUPER DISCOUNT listed its Secretary / Treasurer as Jamal K. ALAHWAS.

12. Based on a review of the above information, it appeared that H&J SUPER DISCOUNT, through the actions of its owners/operators, ALGHOZZI and ALAHWAS, accumulated cash from its operations and then structured the cash deposits through multiple FCB accounts at multiple FCB branches, a violation of Title 31, U.S.C., § 5324(a)(3). Based on this violation, I obtained a Seizure Warrant from the Eastern District of North Carolina on July 22, 2010. The Seizure Warrant authorized seizure of all funds within FCB accounts 003242535690, 003242552696, 003249661606, and 003249660646 and the contents of any safe deposit box held in the name of H&J SUPER DISCOUNT, or ALAHWAS and ALGHOZZI.

13. On July 26, 2010, I notified FCB personnel that I had obtained a seizure warrant from the Eastern District of North Carolina. After receiving the information, FCB personnel placed a debit freeze on all affected accounts.

14. On July 27, 2010, I, along with RAC/Raleigh S/A Leonardo Livreri, travelled to H&J SUPER DISCOUNT and met with ALGHOZZI. ALGHOZZI agreed to an interview with S/As and during the interview ALGHOZZI provided the following information:

   a. ALGHOZZI indicated that he began working at H&J SUPER DISCOUNT in 2001 and that he was the co-owner of H&J SUPER DISCOUNT until January 1, 2009. ALGHOZZI indicated he is currently a manager at H&J SUPER DISCOUNT.

   b. ALGHOZZI indicated that he sold his share (50%) of H&J SUPER DISCOUNT to Ali Al Gozy on January 1, 2009. (Al Gozy purchased the 50% share for $100,000.)

   c. ALGHOZZI indicated that he was aware of the requirement that CTRs be filed for deposits in excess of $10,000.

   d. ALGHOZZI indicated that he did not make any of the structured deposits into the FCB accounts.

   e. ALGHOZZI indicated that Al Gozy made the deposits in Elizabethtown, North Carolina and that those deposits were monthly payments for Al Gozy's 50% share of the business.

   f. ALGHOZZI indicated that ALAHWAS was out of the United States on vacation with Al Gozy and that he did not know when they would return. (ICE databases confirmed ALAHWAS'S departure from the United States on April 13, 2010.)

15. On August 2, 2010, I, along with RAC/Raleigh S/A Russell Spruance, travelled to the Main Street FCB branch in Smithfield,

North Carolina. The purpose of the visit was to examine and seize the contents of a safe deposit box maintained by ALGHOZZI and ALAHWAS. The safety deposit box contained immigration paperwork, passports, and other miscellaneous documents. I remitted the items to ALGHOZZI on August 12, 2010.

16. On January 5, 2011, I examined surveillance photos taken at FCB branches in Smithfield, North Carolina at the time of some of H&J SUPER DISCOUNT'S cash deposits. The photos indicate the following:

    a. On November 09, 2009, at approximately 1401 hours, ALAWHAS made a drive through deposit at the Smithfield South Branch. On the same date at approximately 1415 hours, ALAHWAS made a drive through deposit at the Smithfield Main Branch. Deposit records from November 09, 2009, show a total of $10,515 deposited in H&J SUPER DISCOUNT accounts that day.

    b. On November 23, 2009, at approximately 1315 hours, ALAWHAS made a drive through deposit at the Smithfield South Branch. On the same date at approximately 1330 hours, ALAHWAS made a lobby deposit at the Smithfield Main Branch. Deposit records from November 23, 2009, show a total of $10,577 deposited in H&J SUPER DISCOUNT accounts that day.

    c. On December 14, 2009, at approximately 1344 hours, ALAWHAS made a drive through deposit at the Smithfield South Branch. On the same date at approximately 1348 hours, ALAHWAS made a drive through deposit at the Smithfield Main Branch. On the same date at approximately 1408 hours, ALAWHAS made a lobby deposit at the Smithfield South Branch. Deposit records from December 14, 2009, show a total of $11,160 deposited in H&J SUPER DISCOUNT accounts that day.

17. As of January 5, 2011, ICE databases indicate that ALAHWAS has not re-entered the United States, and therefore, RAC/Raleigh has not been able to interview ALAHWAS regarding his involvement in this investigation's structuring activity.

## CONCLUSION

18. Based on the foregoing, probable cause exists to believe that the $52,352.79 in United States Currency seized on July 27, 2010, is traceable to violations of Title 31, U.S.C., §§ 5313(a) and 5324(a)(3). In summary, H&J SUPER DISCOUNT, through the actions of its owners/operations, ALGHOZZI and ALAHWAS, knowingly and willfully structured cash deposits into their various FCB account in order to avoid the reporting requirement defined in Title 31, U.S.C., §

5313(a). By doing so, H&J SUPER DISCOUNT violated Title 31, U.S.C., § 5324(a)3).

19. For all the foregoing reasons, I believe probable cause exists to conclude that aforementioned funds seized from FCB are forfeitable to the United States of America pursuant to Title 31, U.S.C., § 5317.

I, Christopher E. Brant, declare under penalty of perjury, that the foregoing is true and correct, in accordance with Title 28, U.S.C., § 1746. Respectfully submitted this __5th__ day of January 2011.

Christopher E. Brant
Special Agent
Immigration and Customs Enforcement